UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CRAIG L DAVIS and YVONNE
M DAVIS,

      Plaintiffs,

v.                                     Case No. 2:19-cv-780-SPC-NPM

WING ENTERPRISES, INC.,

      Defendant.

_____

**ORDER**

The parties in this products liability action have filed multiple motions related to the pleadings and some discovery disputes. In the interim, the Court held a status conference in an effort to resolve or narrow the issues presented.

This action arises from an allegedly defective Little Giant Velocity Model 22 Ladder (the "ladder" or "subject ladder") manufactured by Defendant Wing Enterprises, Inc. Plaintiffs Craig and Yvonne Davis seek damages[1] for injuries resulting from a fall from the ladder (Doc. 68). On or about December 11, 2018, Craig Davis used the ladder in an extension position at his home to decorate his

---

[1] Plaintiffs' causes of action include Negligence, Strict Liability, Defect in Warnings/Instructions/Marketing Defect, Breach of Implied Warranty of Merchantability, Breach of Express Warranty, and Loss of Consortium (Doc. 68).

garage with Christmas lights. (Doc. 68, ¶ 20). The ladder was almost new, and this was the first time Davis used it in an extension position under load. (Doc. 68, ¶¶ 6, 9, 20). Allegedly, the ladder failed and caused serious life-changing injuries. (Doc. 68, ¶¶ 20, 22).

## I.     Plaintiffs' Opposed Motion for Leave to Amend Complaint (Doc. 82)

Plaintiffs seek to amend their complaint to add successor corporations as defendants in this case. Plaintiffs also seek to add new factual contentions and claims to conform to the evidence—particularly in light of the opinions of Plaintiffs' experts. (Doc. 82).

As an initial matter, the deadline to amend pleadings was October 3, 2020 (Doc. 53), but the motion for leave to amend was filed on February 26, 2021 (Doc. 82). When a deadline appears in a scheduling order and a motion for more time is filed after the deadline, "Rule 16 is the proper guide for determining whether a party's delay may be excused." *Destra v. Demings*, 725 F. App'x 855, 859 (11th Cir. 2018). Under Rule 16(b)(4), "a schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Under this standard, the party requesting the extension demonstrates good cause only if, despite its diligence, the party cannot meet the deadline. *See* Fed. R. Civ. P. 16, 1983 Advisory Committee Notes; *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009) (citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998)). This means

Plaintiffs must show that, despite due diligence, they could not move to amend by the October 3, 2020 deadline.

Here, Plaintiffs state their deposition of Arthur Wing—the CEO and Chairman of Defendant Wing—on February 2, 2021 prompted this motion. Arthur Wing testified that on or about December 24, 2020, Defendant sold its assets and liabilities, including any liability for the claim in this lawsuit, to other corporate entities. (Doc. 82, p. 2). However, Defendant did not apprise Plaintiffs of this reorganization by filing an amended corporate disclosure statement. It was only during Mr. Wing's February 2, 2021 deposition that Plaintiffs first learned of the reorganization. (Doc. 99, pp. 7-8).

Throughout discovery, including testing of the subject and exemplar ladders, Plaintiffs' experts have identified the deficit in the ladder with more specificity. (Doc. 82, pp. 3-4). Pursuant to the Court's order granting Defendant's motion to compel functional testing of the ladder, the parties inspected and tested the subject ladder on January 29, 2021. (Doc. 79; Doc. 84, p. 8). Plaintiffs also had difficulty obtaining exemplar ladders with the Rock Locks 2.1[2] mechanism. This was because Rock Locks 2.1 are a redesigned version of Rock Locks 2.0, which were allegedly recalled in March 2017 because of disengagement problems. The Rock Locks 2.1

---

[2] The redesigned version of the ladder had Rock Lock 2.0 tall, but for ease of reference, the redesigned version will be referred to as Rock Locks 2.1. (Doc. 99, p. 5 n.5).

redesign occurred in January 2017. Specifically, Defendant redesigned the shoulder above the pin and lengthened the barrel pin. Then, in June 2017, Defendant completely redesigned the system to Rock Locks 3.0, which does not have the same defect as the 2.0 or 2.1 versions and was not an adequate exemplar to test. Given the limited stock of Rock Locks 2.1, Defendant was only able to produce Rock Lock 2.0 as an exemplar ladder for testing, which was produced to Plaintiffs on or after December 16, 2020. (Doc. 99, pp. 5-6 n.5, p. 8 n.12.).

While Defendant claims no good cause exists because this discovery was sought after the amendment deadline (Doc. 111, pp. 6-7), discovery need not have been fully conducted by the amendment deadline (*See* Doc. 67) (discovery deadline was April 9, 2021). These events occurred well beyond the October 3, 2020 deadline, and Plaintiffs' motion for leave to amend was filed shortly thereafter. Given these developments that occurred after October 3, 2020, the Court will not deny the motion based on untimeliness.

To amend a pleading, Plaintiffs must satisfy Rule 15, which provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision whether to permit an amendment is within the sound discretion of the court, however, the Supreme Court has held that the words "leave shall be freely given" must be heeded. *See Foman v. Davis*, 371 U.S. 178, 182

(1962). Consequently, the Court must find a justifiable reason in denying a request for leave to amend. *Id.* "[T]he Supreme Court indicated that a court should deny leave to amend a pleading only when: (1) the amendment would be prejudicial to the opposing party, (2) there has been bad faith or undue delay on the part of the moving party, or (3) the amendment would be futile." *Taylor v. Fla. State Fair Auth.*, 875 F. Supp. 812, 814 (M.D. Fla. 1995) (citing *Foman*, 371 U.S. at 182).

### A.   *Successor corporate entities*

First, Plaintiffs seek to add three entities as defendants: (1) Little Giant Ladder Systems, LLC ("LGLS"); (2) Ladder Holdings, Inc.; and (3) Industrial Opportunity Partners, LLC ("IOP"). To get clarity on whether successor corporations needed to be added as parties to this suit, the Court held a status conference on April 8, 2021. (Doc. 113). Pursuant to the Court's direction, Defendant Wing filed an updated corporate disclosure statement to clarify the corporate hierarchy. (Doc. 123).

The parties filed a joint stipulation regarding the reorganization on February 20, 2021. (Doc. 80). But on March 12, 2021, Defendant filed a unilateral stipulation correcting certain information about the corporate reorganization. (Doc. 83; Doc. 111, p. 3). The joint stipulation is the subject of a separate motion to withdraw (Doc. 94), addressed in more depth later in this Order. For purposes of the motion for leave to amend, the Court will reference the updated unilateral stipulation (Doc. 83) and second amended corporate disclosure statement (Doc. 123).

Defendant Wing converted to become LGLS in December 2020. LGLS holds the same federal employer identification number that Wing Enterprises, Inc. held, and Defendant admits that "for all purposes, Wing and LGLS are one-in-the-same." (Doc. 83; Doc. 111, p. 3). And LGLS stipulated the following:

> 1) the liability of Wing Enterprises for this claim shall survive the sale of membership interests and shall remain a claim against LGLS;
>
> 2) any liability of Wing Enterprises as a result of the allegations of the operative Complaint shall also be the liability of LGLS;
>
> 3) any judgment entered against Wing Enterprises in favor of Plaintiffs shall also be collectable from LGLS; and
>
> 4) LGLS consents to be bound by the terms of the stipulation.

(Doc. 111, p. 3) (citing Doc. 83). Given this sale and stipulation, Defendant's name will be corrected to Little Giant Ladder Systems, LLC f/k/a Wing Enterprises, Inc.[3]

Plaintiffs also argue the other two proposed defendants—Ladder Holdings, Inc. and IOP—are necessary parties. (Doc. 99, pp. 2, 12). Rule 19(a) governing compulsory joinder provides:

> (1) **_Required Party._** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> >
> > (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

---

[3] For the remainder of this order, Wing Enterprises, Inc. and LGLS will be used interchangeably when referring to Defendant, although the pending motions in this case were filed when only Wing Enterprises was the named Defendant.

       (i) as a practical matter impair or impede the person's ability to
            protect the interest; or

       (ii) leave an existing party subject to a substantial risk of incurring
            double, multiple, or otherwise inconsistent obligations
            because of the interest.

Fed. R. Civ. P. 19(a). To determine whether a party is indispensable, "the court must ascertain under the standards of Rule 19(a) whether the person [or entity] in question is one who should be joined if feasible." *Focus on the Fam. v. Pinellas Suncoat Transit Auth.*, 344 F.3d 1263, 1279-1280 (11th Cir. 2003) (quoting *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982)). To make this determination, pragmatic considerations control, such as the effect on the parties and on the litigation. *Id.* at 1280.

    Ladder Holdings, Inc. is the sole member of LGLS. (Doc. 111, p. 3; Doc. 123). While Ladder Holdings purchased the membership interest in LGLS, it did not assume the liabilities of LGLS. (Doc. 111, p. 4). The other proposed defendant, IOP, is not a shareholder of Ladder Holdings—it is one level removed from Ladder Holdings. Industrial Opportunity Partners III, LP links the two proposed defendants to each other. Industrial Opportunity Partners III, LP is a majority shareholder of Ladder Holdings. While not obvious from the second amended corporate disclosure statement (Doc. 123) or sur-reply (Doc. 111, p. 4), defense counsel clarified during the April 8, 2021 status conference that IOP is connected to the intermediary entity—

Industrial Opportunity Partners III, LP. Thus, IOP is three levels removed from LGLS.

Plaintiffs argue Ladder Holdings and IOP are necessary parties because they are needed to ensure complete relief is afforded in case LGLS is not collectible. (Doc. 99, p. 12). Similarly, Plaintiffs also contend there is a risk of multiple lawsuits, implying they could occur due to efforts to collect a judgment if Plaintiffs prevail. (Doc. 99, pp. 12, 14). Yet, Plaintiffs have not provided any indication that LGLS would not be collectible, and defense counsel advised during the April 8, 2021 status conference that Defendant is collectible should judgment be entered in Plaintiffs' favor. And as previously noted, LGLS stipulated any judgment entered against Wing Enterprises and in favor of Plaintiffs would be collectible from LGLS. (Doc. 83, p. 2; Doc. 84, p. 13).

Plaintiffs' arguments do not justify adding these two entities as indispensable parties. Under Florida corporation law, which applies in this diversity action, individual corporate shareholders or LLC members are generally shielded from liability for the actions of their respective corporation or LLC. *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) ("A corporation is a legal entity—a fictional person—capable of entering contracts and doing business in its own right. The purpose of this fiction is to limit the liability of the corporation's owners, whether they be individuals or other corporations. Finding this

arrangement useful to commerce, the Florida courts will not easily disregard this fiction."). Plaintiffs have not justified—nor attempted to justify—why piercing the corporate veil is appropriate here. Even if the Court were to pierce the corporate veil as to Ladder Holdings, Inc., IOP is several levels removed from LGLS. There is simply no reason to pierce the corporate veil or add either of these proposed defendants to this case.

### B.   New factual allegations

Plaintiffs also seek to amend their complaint to add new factual contentions and claims to conform to the evidence. (Doc. 82, pp. 1, 3-4). They claim their theory of liability remains the same—the cause of the ladder failure was a false lock. (Doc. 99, pp. 4, 14-16). But Defendant disagrees, claiming Plaintiffs seek to abandon their manufacturing defect theory of liability and change it to a design defect theory of liability (Doc. 84, pp. 9, 16-19; Doc. 111, pp. 5-6).

In the operative second amended complaint, Plaintiffs claim that the barrel pin in the ladder was defective because it was manufactured outside of the required tolerances, in that it was too long. This, they claim, prevented the barrel pin from being able to insert properly into the inner rung, which caused the ladder to telescope down while Craig Davis was on the ladder. (Doc. 68, ¶¶ 10-11, 20; *see also* Doc. 126, p. 3).

Upon review of the proposed third amended complaint, Plaintiffs shift gears to focus on the Rock Locks design. Plaintiffs allege that Defendant's prior ladder model with Rock Locks 2.0 had a tendency to unintentionally disengage—meaning the barrel pin was fully inserted to connect the outer and inner rails but was able to pivot out of the inner rail hole. If an unintentional disengagement occurred, the ladder could telescope down when under load and pose a fall hazard to users. (Doc. 82-1 ¶¶ 12-15). The Rock Locks 2.0 system was allegedly recalled on or about March 23, 2017, due to certain defects in the Rock Locks system. (Doc. 82-1 ¶ 14). And to correct the unintended disengagement issue, Defendant redesigned the Rock Locks system. (Doc. 82-1 ¶ 15). Plaintiffs' design defect is based on these allegations because the barrel pin in the Rock Locks 2.1 system tended to false lock, which occurs when the barrel pin is not completely inserted into the inner rail channel and thereby is not fully engaged. (Doc. 82-1 ¶¶ 12, 16). Like the unintended disengagement, a false lock could similarly result in a telescopic event and fall hazard to users. (Doc. 82-1 ¶¶ 16-17).

Plaintiffs allege that Defendant, either at its factory in China or in its Utah facility, removed Rock Locks 2.0 and replaced it with Rock Locks 2.1. The ladders with the replaced Rock Locks were identified with a sticker and then sold to customers, including Plaintiffs. (Doc. 82-1 ¶¶ 9, 15-16, 18). But Plaintiffs do not allege the Rock Locks 2.1 system was defectively manufactured—as in not

manufactured according to the redesign specifications. In fact, the proposed complaint omits the prior allegations that the barrel pin was manufactured too long and out of tolerance. (Doc. 84-1, pp. 7-9).

While Defendant is correct in that the theory of the case has shifted from manufacturing to design defects, the Court will nonetheless allow Plaintiffs to amend their complaint to narrow and correct the pertinent issues in this case.[4] Given the parties' inability to cooperate and the inundation of motions filed, the Court vacated the current scheduling order and will issue new deadlines. (Docs. 113, 125). Defendant cited one case in which the court denied a delayed motion to amend in part because one of the defendants would be prejudiced if it needed to expend additional resources investigating a new causation theory. *Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1276 (M.D. Fla. 2002). This case is different. Although the legal theory has changed, the underlying defect—that the ladder failed due to a false lock—has not. And the allegations that the Rock Locks system, in particular the barrel pin, is the source of the false locking problem remains. Defendant will not be prejudiced by the amendment, given the same general theory of the case and the allowance of additional time.

---

[4] Plaintiffs' continued characterization of its theory of liability as a manufacturing defect does not change this fact. (Doc. 126, pp. 5, 18, 21 & n. 22). Plaintiffs even admit their own expert opined the reason for the binding or false locking is due to the geometry of the barrel pin tip (Doc. 126, pp. 3-4), which further supports characterizing the theory as a *design* defect.

In the *Third* Amended Complaint (Doc. 99, p. 14, n.21), Plaintiffs must correct the Defendant's name pursuant to this Order and fix the plethora of typographical errors throughout—for example, the spelling of Fort Myers in the heading and body. Plaintiffs must also remove all references to obtaining leave of Court. (Doc. 82-1 ¶¶ 21-23, 31-33). No further amendments will be permitted.

## II. Defendant's Motion to Strike Claim for Exemplary and Punitive Damages in Second Amended Complaint (Doc. 71)

Defendant contends punitive damages are not appropriate because Plaintiffs' allegations in the second amended complaint did not allege design defects, but rather manufacturing defects. (Doc. 71, p. 3) (Doc. 68 ¶¶ 27, 50-51). But as previously addressed, Plaintiffs have leave to amend the complaint to allege design defects. So, for purposes of this motion, the Court will consider the punitive damages allegations in light of the proposed third amended complaint. (Doc. 82-1 ¶¶ 35, 60, 61).

Defendant asserts Plaintiffs have not met the pleading requirements under Florida law to assert punitive damages. (Doc. 71, pp. 4-6). Punitive damages are an appropriate subject of a motion to strike. *Carroll-Brufsky v. E.W. Scripps Co.*, 2:11-cv-500-FTM-99, 2012 WL 1165334, *2 (M.D. Fla. Apr. 9, 2012); *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1340 (11th Cir. 2001). "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

Federal courts sitting in diversity apply state substantive law and federal

procedural law. *Moss v. Liberty Mut. Fire Ins. Co.*, No. 3:16-cv-677-J-39JBT, 2017 WL 4676629, *3 (M.D. Fla. Aug. 18, 2017); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Federal procedural rules govern over conflicting state law. *Moss*, 2017 WL 4676629 at *3. The Eleventh Circuit determined that Florida Statute section 768.72 is not applicable in federal court to the extent that it conflicts with Federal Rule of Civil Procedure 8(a)(3). *Id.* (citing *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1297-1298 (11th Cir. 1999), *opinion vacated in part on reh'g*, 204 F.3d 1069, 1072 (11th Cir. 2000) (leaving intact prior holding "that Florida Statute § 768.72 conflicts with and must yield to the 'short and plain statement' rule contained in [Rule] 8(a)(3), and as a result a Florida plaintiff in federal court because of diversity jurisdiction need not obtain leave of court before pleading a request for punitive damages.").

Although Plaintiffs were not required to obtain leave of court prior to pleading punitive damages, the Eleventh Circuit has determined that "the substantive pleading standard of section 768.72 (requiring a "reasonable showing" that demonstrates "a reasonable basis for recovery of such damages") does not conflict with Federal Rule of Civil Procedure 8(a)(2) (requiring a "short and plain statement of the claim") because a prayer for punitive damages is not a 'claim' within the meaning of that Rule." *Gerlach v. Cincinnati Ins. Co.*, 2:12-cv-322-FTM-29, 2012 WL 5507463, *2 (M.D. Fla. Nov. 14, 2012) (citing *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1297

13

(11th Cir. 1999)). And under Florida law, "merely setting forth conclusory allegations in the complaint is insufficient to entitle a claimant to recover punitive damages. Instead, a plaintiff must plead specific acts committed by a defendant." *Maletta v. Woodle*, No. 2:20-cv-1004-JES-MRM, 2021 WL 1894023, *7 (M.D. Fla. May 11, 2021) (quoting *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1341 (11th Cir. 2001)).

Plaintiffs seek punitive damages, alleging Defendant had actual knowledge of the defects yet still continued to sell the ladder with Rock Locks 2.1 to consumers, including Plaintiffs. As such, Plaintiffs allege Defendant intentionally and recklessly failed to inform the public and consumers of the known defects of the ladder. And Plaintiffs allege that despite such known defects, Defendant intentionally continued to sell the Rock Locks 2.1 ladders, including to Craig Davis in September 2017, instead of recalling them even though Defendant already had a much safer design in June 2017. (Doc. 82-1 ¶¶ 34-36; Doc. 99, p. 5 n.6).

Defendant cites to *Sutor v. Intex Recreation Corp.*, No. 2:12-cv-600-FTM-38, 2014 WL 5439302 (M.D. Fla. Oct. 24, 2014) (Chappell, J.), in which the court rejected a delayed motion for leave to amend to add a claim for punitive damages. In that products liability case, the "[Plaintiffs] allege that their son gained access to the pool via an A-frame ladder which failed to incorporate a means of preventing access by a child despite such a design being known and available to Defendant."

*Id.* at *1. The court found the proposed amended complaint failed to allege any specific facts that established a reasonable basis for the addition of punitive damages and was therefore futile. *Id.* at *4. Unlike *Sutor*, Plaintiffs here already seek punitive damages in the complaint and allege that Defendant had actual knowledge of specific defects in the Rock Locks system even after it was recalled and redesigned. Despite knowing the risks of significant and possibly fatal injury, Plaintiffs allege Defendant continued to market and sell the ladder. Plaintiffs have reasonably alleged facts sufficient to demonstrate a reasonable basis to recover punitive damages. As such, Defendant's Motion to Strike Claim for Exemplary and Punitive Damages in Second Amended Complaint (Doc. 71) is denied.

## III.   Plaintiffs' Opposed Motion for Leave to Supplement Rule 26 Expert Report due to Defendant's Withheld Discovery (Doc. 85)

Next, Plaintiffs seek to supplement their Rule 26 liability expert report of mechanical engineer, Peter Poczynok, P.E. (Doc. 85). Plaintiffs timely designated Poczynok on February 15, 2021, and provided his report. (Doc. 78; Doc. 85, p. 1).

On October 10, 2020, Plaintiffs requested information and documents concerning claims made by other individuals regarding the ladder, but in its November 16, 2020 responses, Defendant objected and withheld this information. (Doc. 85, pp. 2-3, 5). On December 21, 2020, after meeting and conferring, Plaintiffs agreed to narrow their requests to other claims regarding the Rock Locks, and Defendant produced responsive claim documents on December 29, 2020. But the

contact information for individuals making other similar claims was unilaterally redacted by Defendant. Without the names and contact information, Plaintiffs assert they were unable to fully investigate each claim to uncover any similarities with their own case. (Doc. 85, pp. 5-6). The parties continued back and forth concerning the redacted information, and Plaintiffs even drafted a motion to compel and provided it to Defendant on February 16, 2021. Plaintiffs also narrowed their request further to seek the identities of three specific claimants. (Doc. 101, p. 4; Doc. 85-2, p. 4). Eventually, on February 22, 2021, Defendant produced the requested information in its Fifth Supplemental Response to Plaintiffs' First Request for Production. In particular, this response provided the unredacted contact information pertaining to other similar incidents, which identified Claude Rhead. (Doc. 85, pp. 1-3, 6-7).

Plaintiffs contacted Rhead, and they learned that Rhead's incident was remarkably similar to Craig Davis's incident. On February 26, 2021, Poczynok was in San Diego, where Rhead resides, and physically inspected and tested his ladder. On March 4, 2021, Rhead was deposed by both parties. (Doc. 85, pp. 7, 11-12). Based on this additional information, which was not available prior to the February 15, 2021 deadline for expert reports, Poczynok prepared a supplemental report dated March 6, 2021, that was sent to defense counsel on March 7, 2021. (Doc. 85, pp. 6-7).

During Poczynok's March 9, 2021 deposition, defense counsel objected to

any testimony relating to Poczynok's supplemental report, claiming it was untimely. (Doc. 85, pp. 2, 7-8, 12-13). Nevertheless, Plaintiffs offered to make Poczynok available for a second deposition regarding his supplemental opinions and maintain that position now. (Doc. 85, pp. 2, 7-8, 12-13, 15).

Defendant only partially opposes the motion for leave to supplement. (Doc. 101). Specifically, Defendant does not oppose supplementation with regard to opinions based on the Rhead ladder (opinions 1, 2, 4, 5, and 6 of the supplemental report). Defendant only opposes opinions 3 and 7 of the supplemental report because it claims they are not based on information derived from the Rhead ladder, was known to Plaintiffs prior to their expert disclosure deadline, and opinion 3 is contradictory to Poczynok's initial Rule 26 report. (Doc. 101, p. 1).[5] Plaintiffs maintain Poczynok's supplemental report does not contain any new opinions or

---

[5] The contested opinions from Poczynok's supplemental report are:

> 3. By the admission of Wing Enterprises, lengthening the barrel pin was not intended to address the issue of unintended disengagement. It is likely that lengthening the barrel pin was an effort to address false locking associated with the second generation rock lock, which Wing Enterprises admits they were aware of.

> 7. In order for the ladder to have slid out without the upper fly section first descending due to the release of false locked rock locks on the Davis and Rhead ladders, it would have to have been placed at an extreme angle that would have been visually obvious and contrary to the testimony and custom and practice of both Mr. Davis and Mr. Rhead.

(Doc. 101-1, p. 18).

theories of liability, but rather it fully expands his initial report with the new information obtained from Rhead. (Doc. 85, pp. 7, 12). And Plaintiffs teased out certain rebuttal arguments in its Opposed Motion for Leave to File Reply (Doc. 104).

Had Defendant provided information about the other claimants sometime after Plaintiffs' initial discovery request in October 2020, rather than after Plaintiffs' expert disclosure deadline already passed, there would have been no need for Court intervention. This is because Poczynok would not have needed to supplement his report. And most of the supplemental report had no objection—only two opinions face objection. (Doc. 101). Therefore, Plaintiffs' motion for leave to supplement (Doc. 85) is granted. To alleviate any potential prejudice to Defendant, Plaintiffs must make Poczynok available for a second deposition, as promised, for questioning on his supplemental report **within 45 days** of this order. Defendant may question Poczynok on his supplemental opinions and may refer to his original report, as needed, to address any contradictory opinions that may exist.

## IV. Defendant's Opposed Motion for Protective Order Preventing Duplicative 30(b)(6) Deposition (Doc. 90)

Defendant seeks a protective order preventing a second, duplicative deposition of its 30(b)(6) corporate representative Brian Russell on issues of design changes, reasons for design changes, and testing. Defendant also seeks a protective order preventing a second, duplicative deposition of Arthur Wing on the subject of warranty claims and failure reports. These issues were the subject of Russell's and

Wing's first depositions. (Doc. 90).

The depositions were scheduled for April 2, 2021. (Doc. 90-4, p. 2). To allow Plaintiffs sufficient time to respond and the Court time to consider the motion, the Court canceled the depositions of Russell and Wing until the motion was resolved. (Doc. 95).

Thereafter, Plaintiffs filed a "Response Not in Opposition" to Defendant's motion (Doc. 100). Plaintiffs believe it is in the best interest for the parties to resolve certain outstanding discovery disputes without the need of burdening the Court with a response to this motion. Once the discovery items are addressed, Plaintiffs claim that they intend to seek leave to conduct discovery with respect to all items ruled on by the Court. (Doc. 100, pp. 2, 4).

Given the lack of opposition, Defendant's motion for a protective order (Doc. 90) is **DENIED as moot and without prejudice**. Should Plaintiffs seek to re-depose Russell or Wing, they must confer in good faith with Defendant on the scope of a second deposition. If the parties are unable to agree on the scope of a second deposition, Plaintiffs must seek leave of Court before seeking to re-depose such witnesses, include a list of topics, and explain why a second deposition would not be duplicative. *See* Fed. R. Civ. P. 30(a)(2)(A)(ii).

## V.    Plaintiffs' Opposed Motions to Compel Discovery (Doc. 93, 96)

Plaintiffs filed their first motion to compel discovery responses on March 22,

2021. (Doc. 93). This motion seeks the production of documents in response to several requests for production concerning design defects. One day later, Plaintiffs filed their second motion to compel discovery. (Doc. 96). This second motion also seeks the production of documents, this time concerning the corporate structure.

### A.    First Motion to Compel (Doc. 93)

Defendants argue the first motion to compel should be denied because (1) it is untimely, as the matter would not be resolved before the April 9, 2021, discovery deadline; (2) it seeks production of documents that are not "relevant to any party's claim or defense and proportional to the needs of the case,"; and (3) many of the individual requests are overbroad, vague, and not reasonably limited in time or scope. (Doc. 109, pp. 9-19) (quoting Fed. R. Civ. P. 26(b)(1)). Plaintiffs also recently advised that some responsive documents were produced on May 7, 2021, but did not specify which requests were consequently mooted. (Doc. 126, p. 9).

Given the multitude of discovery motions filed by both parties and the need to revisit the scheduling order in this case, the Court will not deny Plaintiffs' first motion as untimely. And because the Court has given Plaintiffs leave to amend the complaint, the Court will also not deny this motion on the basis that the requests seek documents aimed at discovering information targeted to design defects.

Plaintiffs' individual requests are as follows:

REQUEST #19. Any documents referring to or mentioning alternative designs for the subject ladder, including any alternative designs for the Barrel

Pin or Rock Lock.

REQUEST #21. Any documents referring to any hazard analysis performed for the Barrel Pin or Rock Lock used in the Ladder as defined above.

REQUEST #22. Any documents setting forth quality control tests that were performed during and after the manufacture of the subject ladder, including any tests performed on the Barrel Pin and Rock Lock for the Ladder as defined above.

REQUEST #23. Any documents setting forth how often the quality control tests referred to in the preceding request were performed, by whom the tests were performed, what information is recorded and reported and the physical location (address and location) of where the test reports are maintained.

REQUEST #27. All development documents, including all design, testing, modifications, patent applications and quality assurance for the Ladder as defined above.

REQUEST #62. All versions, including all revisions for drawings of the Barrel Pin, drawing 26575, including all documents explaining or setting forth the reasons for the revisions.

REQUEST #63. All versions, including all revisions for drawings of the Barrel Pin, drawing 24470, including all documents explaining or setting forth the reasons for the revisions.

(Doc. 93, pp. 2, 6-8). Generally, Defendant objected to these requests as overbroad, vague, unduly burdensome, and not relevant (Doc. 109, pp. 14-19). Nevertheless, Defendant produced some responsive documents, totaling nearly 900 pages. (Doc. 109, pp. 7, 15-17, 18-19).

Defendant's concerns of overbreadth and vagueness are well-taken. All Plaintiffs requests will be narrowed to Velocity Model 22 ladders with the Rock Locks 2.0 or 2.1 design and for the period between 2016 through 2018. With these limitations, Requests 19, 21, and 23 are granted.

Request 22 is denied because Defendant reasonably responded to this request. (Doc. 109, pp. 15-16). Request 27 is denied to the extent is seeks patent applications and quality assurance information because this information was already reasonably produced. (Doc. 109, pp. 16-17). But Request 27 is granted to the extent there are responsive development documents pertaining to design, testing, and modifications and given the above limitations that Defendant has not already produced.

Request 62 is denied to the extent it seeks drawings and revisions to barrel pin drawing 26575 because Defendant complied by producing this drawing and its revisions. (Doc. 109, pp. 17-18). But Request 62 is otherwise granted in part, such that Defendant must produce any documents with the global limitations noted above that explain or set forth the reasons for the revisions. In response to Request 63, Defendant stated it produced drawing 26575 (Doc. 109, p. 19) rather than what Request 63 actually sought, which was drawing 24470 (Doc. 93, p. 8; Doc. 109, p. 18). So, Request 63 is granted, and Defendant must produce drawing 24470 and its revisions as long as it complies with the global limitations noted above, and Defendant must produce any documents that explain or set forth the reasons for the revisions that also comply with the global limitations.

### B.   *Second Motion to Compel (Doc. 96)*

Defendant argues the second motion to compel should be denied because (1) the documents requested in Requests #68-71 do not exist, as Defendant indicated in

its discovery responses, and (2) discovery on profits and losses and tax documents relative to Plaintiffs' punitive damages claim is premature because the motion to strike the claim is pending and Plaintiffs have not presented reasonable evidence to support the claim. (Doc. 112, pp. 1-2).

Plaintiffs' individual requests are as follows:

REQUEST #68. The written agreement by which the assets and liabilities of Wing Enterprises, Inc., were purchased by Industrial Opportunity Partners, LLC.

REQUEST #69. The written agreement by which the assets and liabilities of Wing Enterprises, Inc., were purchased by TI II Ladder Holdings, LLC.

REQUEST #70. Any documents that refer to or address the purchase of the potential liability of Wing Enterprises, Inc., for the above referenced claim by Industrial Opportunity Partners, LLC.

REQUEST #71. Any documents that refer to or address the purchase of the potential liability of Wing Enterprises, Inc., for the above referenced claim by TI II Ladder Holdings, LLC.

REQUEST #72. The profit/loss statement for Wing Enterprises for 2020. This request is relevant since punitive damages have been plead in the Second Amended Complaint and this action is a federal diversity case, punitive damage discovery is permitted without seeking leave of Court. See Cohen v. Office Deport [sic], Inc., 184 F. 2d. 1292, 1299 (11th Cir. 1999) (vacated on other grounds 204 F. 3d 1069 (11th Cir. 2000) holding that Fla. Stat. Section 768.72's requirement that a plaintiff must seek the court's permission to file a claim for punitive damages is inapplicable in Federal Court.

REQUEST #73. The Schedule C for Wing Enterprises for 2020. This request is relevant since punitive damages have been plead in the Second Amended Complaint and this action is a federal diversity case, punitive damage discovery is permitted without seeking leave of Court. See Cohen v. Office Deport [sic], Inc., 184 F.2d. 1292, 1299 (11th Cir. 1999) (vacated on other grounds 204 F.3d 1069 (11th Cir. 2000) holding that Fla. Stat. Section 768.72's requirement that a plaintiff must seek the court's permission to file a claim for punitive damages is inapplicable in Federal Court.

(Doc. 96, pp. 2-4, 9).

Certain documents sought are based on the testimony of Arthur Wing. (Doc. 96, p. 1). However, Defendant clarified that Wing misunderstood aspects of the corporate structure and provided an errata sheet as well as filed a unilateral stipulation, which the Court addressed earlier. (Doc. 112, pp. 4; Doc. 112-1). So Defendant generally responded to these requests for production, stating that certain documents do not exist or the financial documents sought were premature because they relate to punitive damages. (Doc. 112, pp. 8-15). But, one day after Plaintiffs' second motion to compel was filed, Defendant supplemented its response to Request 68. Defendant agreed to produce redacted agreements between Ladder Holdings, Inc. and LGLS under the parties' confidentiality agreement. (Doc. 112, p. 8 n.2).

Since the Court denied Defendant's motion to strike punitive damages, Plaintiffs' Requests 72 and 73 are granted. The Court also already addressed the corporate hierarchy and has granted leave to correct the Defendant's name to "Little Giant Ladder Systems, LLC f/k/a Wing Enterprises, Inc." The Court also denied leave to add IOP or Ladder Holdings, Inc. as Defendants, and discovery as to these entities is outside the scope of discovery. And Defendant affirmed that certain requested documents do not exist—nonexistent documents cannot be compelled.

Plaintiffs' sole argument for seeking corporate documents is they believe the documents exist according to Arthur Wing's testimony (Doc. 96, pp. 2-4). But as

24

previously noted, this was corrected and is not a valid basis for seeking these documents. Even if Plaintiffs seek these documents to ensure it could collect a judgment, that concern is alleviated by amending Defendant's name to the correct (and collectible) party. Accordingly, the motion to compel responses to Plaintiffs' Requests 68 through 71 are denied.

## VI.   Defendant's Opposed Motion to Withdraw Stipulation (Doc. 94)

On February 20, 2021, Defendant Wing Enterprises entered into a joint stipulation with Plaintiffs outlining the details of the sale of assets and liabilities that occurred in December 2020. (Doc. 80). In preparation for that original stipulation, Arthur Wing was asked to verify the accuracy of the information therein, but he provided inaccurate information based on his misunderstanding of the corporate structure of the parties involved and the nature of the agreement. (Doc. 94, p. 2) (Doc. 94-4, p. 2) (Aff. Harold Arthur Wing). After the inaccuracies were identified, Defendant unilaterally filed a corrected stipulation. (Doc. 83). Defendant now seeks to withdraw the original stipulation (Doc. 80) because it is factually inaccurate. (Doc. 94).

Plaintiffs oppose the motion, but their opposition stems from their concerns about collecting judgment should they prevail. (Doc. 108). As previously discussed, Plaintiffs have leave to amend their complaint to correct the Defendant's name to

Little Giant Ladder Systems, LLC f/k/a Wing Enterprises, Inc. So any concern about collectability is a nonstarter.

A district court has broad discretion in determining whether to hold a party to a stipulation. *See Morrison v. Genuine Parts Co.*, 828 F.2d 708, 709 (11th Cir. 1987) (internal citations omitted). "The Eleventh Circuit Court of Appeals has held that when a party discovers that it has erroneously stipulated to facts that do not reflect the genuine state of affairs, the trial court has broad discretion in setting aside the erroneous stipulations." *Sam Galloway Ford, Inc. v. Universal Underwriters Ins. Co.*, 793 F. Supp. 1079, 1082 (M.D. Fla. 1992) (citing Morrison); *see Blohm v. Comm'r of Internal Revenue*, 994 F.2d 1542, 1552-1553 (11th Cir.1993) (district court did not abuse its discretion in granting defendant's motion for relief from the binding effect of a stipulation of fact).

The Court finds no justifiable reason to deny the motion to withdraw a factually inaccurate stipulation. Not only has Defendant corrected the stipulation, but LGLS will be a named party in this case and is collectible should judgment be entered against it. Therefore, Defendant's motion to withdraw stipulation (Doc. 94) is granted.

## VII.   Defendant's Motion for Protective Order (Doc. 105)

Defendant moved for a protective order preventing the deposition of Defendant's Rule 30(b)(6) corporate representative, which was scheduled for April

6, 2021. (Doc. 105). Pursuant to Rule 26(c)(1), any "party or any person from whom discovery is sought may move for a protective order," and the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements' supporting the need for a protective order." *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429-430 (M.D. Fla. 2005) (citing *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

According to Defendant, Plaintiffs served the Notice of Deposition at issue on March 24, 2021, which was only thirteen days' notice and not in compliance with Local Rule 3.04. (Doc. 105, p. 2; Doc. 105-1). The Notice also did not include a list of topics that would be the subject of examination. (Doc. 105-1); *See* Fed. R. Civ. P. 30(b)(6) (the deposition notice "must describe with reasonable particularity the matters for examination"). And Plaintiffs have already deposed eleven individuals by the time the motion was filed on March 31, 2021, with another to take place later that day. (Doc. 105, p. 3). This would be at least the nineteenth deposition Plaintiffs have noticed, but Plaintiffs have not sought leave of Court nor Defendant's consent to exceed ten depositions. (Doc. 105, pp. 3, 6); *See* Fed. R. Civ. P. 30(a)(2)(A)(i) (a party must obtain leave of court if the parties have not stipulated to the deposition

and the deposition would result in more than 10 depositions being taken). And finally, Defendant argues the document requests attached to the deposition notice violate Federal Rules of Civil Procedure 30(b)(2) and 34 because these rules permit a party thirty days to produce documents in response to a document request. (Doc. 105, pp. 5-6).

The Court canceled the deposition to allow time for Plaintiffs to respond and for the Court to consider the motion. (Doc. 110). Plaintiffs did not respond to the motion and the time to do so has passed. But Defendant also failed to properly confer in good faith with opposing counsel about the motion. M.D. Fla. R. 3.01(g); Fed. R. Civ. P. 26(c)(1) ("a motion for protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."). However, given Plaintiffs' failure to respond and because Defendant's position is well-taken, the Court grants Defendant's request for a protective order to the extent it quashes the Notice of Deposition for Defendant Wing's Rule 30(b)(6) corporate representative.

## VIII. Defendant's Motion to Quash and Motion for Protective Order (Doc. 107)

Defendant moved for a protective order and to quash the deposition of non-party Paul Junius, Esq., which was noticed for April 8, 2021. (Doc. 107). Defendant argues the information sought is protected by the attorney-client privilege. It also objects to the document requests within the Notice of Deposition, claiming the

requests seek confidential information and are irrelevant, vague, overbroad, harassing, and duplicative of documents already produced. And according to Defendant, Plaintiffs have already deposed twelve individuals, and Junius would be at least the nineteenth deposition Plaintiffs have noticed. Yet, Plaintiffs have not sought leave of Court nor Defendant's consent to exceed ten depositions. (Doc. 107, pp. 4-7).

In response, Plaintiffs assert that, to establish that communications are protected under the attorney-client privilege, a corporate defendant must satisfy the five elements in *Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d 1222, 1234 (S.D. Fla. 2018) (quoting *S. Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1383 (Fla. 1994)). (Doc. 117, pp. 3-4). Plaintiffs also claim that Defendant should have, but did not, produce a privilege log. (Doc. 117, pp. 4-6). It also appears that Junius may be evading service. (Doc. 117, pp. 13, 17).

Federal Rule of Civil Procedure 26(b)(1), which governs the scope of discovery, provides that "[p]arties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case ...." (emphasis added). "The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26(b)(1) (Advisory Committee Notes, 2015 Amendments). Generally, a party may compel an oral deposition by

29

subpoena under Rule 45 without leave of court. Fed. R. Civ. P. 30(a)(1). But as Defendant correctly notes, Plaintiffs must seek leave of Court or obtain Defendant's consent to conduct more than ten depositions, which they failed to do here. (Doc. 107, pp. 4-7); *See* Fed. R. Civ. P. 30(a)(2)(A)(i).

As another threshold matter, Defendant must demonstrate it has standing to challenge the non-party subpoena. "A party has standing to challenge a non-party subpoena if the party alleges a 'personal right or privilege' with respect to the subpoena." *McCoy v. GEICO Gen. Ins. Co.*, No. 6:19-cv-353-Orl-WWBDCI, 2019 WL 5391104, *2 (M.D. Fla. Aug. 14, 2019) (citations omitted). And a party also has standing to challenge the relevance and proportionality of the information sought. *JWD Auto., Inc. v. DJM Advisory Grp. LLC*, 317 F.R.D. 587, 588-589 (M.D. Fla. 2016). A party does not have standing to object under Rule 45 to a non-party subpoena on the basis that the subpoena is burdensome, oppressive, or overly broad. *McCoy*, 2019 WL 5391104, at *2. It may, however, have standing under Rule 26 to challenge a non-party subpoena by seeking a protective order. *See Skyline Steel, LLC v. J.D. Fields & Co., Inc.*, No. 6:15-cv-528-Orl-41KRS, 2015 WL 13358183, *2 (M.D. Fla. Nov. 24, 2015) ("Federal Rule of Civil Procedure 26 gives a party standing to challenge discovery requests, including nonparty subpoenas, if the requests seek information that is not relevant, overbroad or can be obtained through another source in a more convenient, less burdensome or less expensive way."); *see*

*Klima v. Carnival Corp.*, No. 08-20335-CIV-MOORE, 2009 WL 1066969, *2 (S.D. Fla. Apr. 21, 2009) (discussing the difference in standing to challenge non-party subpoenas under Rules 45 and 26).

Here, Defendant did not challenge proportionality, but it did lodge other objections, including relevance, vagueness, overbreadth, harassment, duplicity, and the attorney-client privilege. The document requests (Doc. 107-1, p. 4) are overbroad and could be discovered through other, less intrusive means, but they are also relevant because they seek information about the Rock Locks at issue in this case. Therefore, the underlying issue in this motion turns on privilege.

Both parties agree the substantive discussion of attorney-client privilege in this diversity action is informed by Florida law. (Doc 107, p. 9; Doc. 117, p. 2); *See Allstate Ins. Co. v. Levesque*, 263 F.R.D. 663, 666 (M.D. Fla. 2010); Fed. R. Evid. 501. Pursuant to Florida law, a communication between an attorney and client is generally considered confidential "if it is not intended to be disclosed to third persons." Fla. Stat. § 90.502(1)(c). "A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client." Fla. Stat. § 90.502(2).

The Supreme Court of Florida recognized that the "purpose of the attorney-client privilege is to 'encourage full and frank communication between attorneys and

their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Worley v. Cent. Fla. Young Men's Christian Ass'n, Inc.*, 228 So. 3d 18, 25 (Fla. 2017) (citations omitted). This privilege "is an interest traditionally deemed worthy of maximum legal protection." *Id.* The burden of establishing the application of the attorney-client privilege rests on the party asserting the privilege. *Absolute Activist Value Master Fund Ltd. v. Devine*, 262 F. Supp. 3d 1312, 1318 (M.D. Fla. 2017); *Cone v. Culverhouse*, 687 So.2d 888, 892 (Fla. 2d DCA 1997); *S. Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1383 (Fla. 1994).

The attorney-client privilege exists even when the attorney's client is a corporation. *First Union Nat. Bank v. Turney*, 824 So. 2d 172, 185 (Fla. Dist. Ct. App. 2001) (citing *Deason*, 632 So. 2d at 1383); *Rogan v. Oliver*, 110 So. 3d 980, 983 (Fla. 2d DCA 2013). But claims of privilege in the corporate context are subject to a heightened level of scrutiny "to minimize the threat of corporations cloaking information with the attorney-client privilege [] to avoid discovery." *Deason*, 632 So. 2d at 1383). "As an inanimate entity, a corporation must act through agents," and it cannot speak directly to its lawyers or directly waive the privilege when disclosure is in its best interest. *Rogan*, 110 So. 3d at 983. Rather, "[e]ach of these actions must necessarily be undertaken by individuals empowered to act on behalf of the corporation." *Id.*

In its reply, Defendant attempts to distinguish the authority cited by Plaintiffs, arguing they did not serve Defendant with the Notice at issue in this motion—rather, they sent it to Defendant's outside counsel, Junius, who is an independent third-party and not its in-house counsel. Defendant also argues it cannot produce a privilege log for a third party. (Doc. 124, pp. 2-6). However, Defendant fails to support this argument with any applicable authority.

The attorney-client privilege protects "confidential *communications* made in the rendition of legal services to the client." *Deason*, 632 So.2d at 1380 (citing Fla. Stat. § 90.502) (emphasis added). A corporate entity, like Defendant, is considered a "client." *See* Fla. Stat. § 90.502(1)(b). And the privilege belongs to the client, not the attorney, and it "may be claimed by the client or the lawyer on behalf of the client." *Nova Southeastern Univ., Inc. v. Jacobson*, 25 So. 3d 82 (Fla. 4th DCA 2009) (citing *Neu v. Miami Herald Pub. Co.*, 462 So. 2d 821 (Fla. 1985)). It does not protect a person or entity from testifying in all circumstances. Whether the attorney is in-house or outside counsel makes no difference in the applicability of the attorney-client privilege because either the lawyer or the client may assert the privilege.

So, the five factors[6] set forth by the Florida Supreme Court to determine whether a corporation's communications are protected by the attorney-client

---

[6] The five factors are:

privilege apply, regardless of whether the client or the outside lawyer was served with the subpoena. However, these factors are unhelpful because the communications or documents purported to be privileged remain unknown. Defendant only explains that Junius is its third-party administrator and national defense coordinating counsel, who provides legal advice with respect to litigation strategy on claims and lawsuits. Defendant also claims that it has never retained Junius in his capacity as a third-party administrator separately and apart from his capacity as providing professional legal advice and services. So, it claims any documents or communications pertaining to Defendant's retention of Junius's services would be in both of those capacities. (Doc. 107, pp. 1, 3-4; Doc. 107-2, p. 2 (Aff. N. Ryan Moss)).

No privilege log has been produced by either Junius, who may be evading service, or Defendant. (Doc. 117, pp. 5-6, 13, 17). But neither have Plaintiffs included a list of topics for deposition. (Doc. 107-1). Only the accompanying

---

1) the communication would not have been made but for the contemplation of legal services;
2) the employee making the communication did so at the direction of his or her corporate superior;
3) the superior made the request of the employee as part of the corporation's effort to secure legal advice or services;
4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties;
5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Deason*, 632 So. 2d at 1383.

requests for document production give any indication of why Plaintiffs seek to depose Junius. Plaintiffs seek documents related to Junius's duties as a third-party administrator as well as documents related to the Rock Lock 2.0 and 2.1. (Doc. 107-1, p. 4).

Given the lack of information from *both* sides, the Court is not able to determine if, and to what extent, the attorney-client privilege applies. The Court hesitates to breach the attorney-client privilege, assuming it exists. While it appears facially unreasonable and unnecessary to depose Junius in his role as Defendant's legal counsel, Defendant's vague assertions of privilege are likewise insufficient. Accordingly, the motion for protective order is denied, but the motion to quash this subpoena is granted.

## IX. Plaintiffs' Motion for Appointment of a Master to Aid the Court with the Outstanding Discovery and to Re-depose Defendant's Witnesses due to Newly Produced "Smoking Gun" Evidence Disclosed One Month After the Discovery Cutoff (Doc. 126)

On August 24, 2021, Plaintiffs filed a motion requesting two forms of relief. First, they seek the appointment of a special master to help facilitate the resolution of the outstanding discovery disputes. (Doc. 126). However, given this Court's order disposing of all outstanding discovery motions, this request is denied. As to Plaintiffs' concerns that Defendant will secretly withhold responsive documents, such actions are sanctionable and the Court will enforce its orders.

Plaintiffs also seek to re-depose Defendant's witnesses. While they do not

expressly name the witnesses they seek to re-depose, it is apparent Plaintiffs are referring to Art Wing, Scott Maxfield, and Brian Russell. (Doc. 126, p. 22). Plaintiffs allege that on May 7, 2021, Defendant provided its Seventh Supplemental Response to Plaintiffs' October 10, 2020 discovery requests. This supplemental response contained an additional 671 pages of documents, much of which Plaintiffs characterize as "smoking gun" evidence. (Doc. 126, p. 3). Relevant to its request to re-depose Defendant's witnesses, Plaintiffs note that they received videos of a Rock Lock 2.0 ladder being tested[7] for unintentional disengagement while the ladder was in extension mode. Thus, Plaintiffs claim Defendant was aware of a dangerous defect. Despite this, Art Wing and Defendant's engineers—Scott Maxfield and Brian Russell—testified under oath "they had no knowledge" of the Rock Locks becoming unintentionally disengaged while in extension mode—an affirmance Plaintiffs claim is materially contradicted by the video evidence. (Doc. 126, pp. 21-24).

Defendant contests Plaintiffs' characterization of the newly produced evidence, but importantly, Defendant clarified is does not oppose Plaintiffs' motion to the extent they seek a limited re-deposition of witnesses on documents supplemented after those witnesses' depositions occurred. (Doc. 127, pp. 3, 18-19).

---

[7] Plaintiffs provide snapshots of a test performed by Wing employee, Ryan Crawford. (Doc. 126, p. 23). Defendant also adds that there is a video in which Brian Russel is testing a pre-recall ladder for disengagement. (Doc. 127, p. 18).

Accordingly, the motion as to the re-deposition of Defendant's witnesses is granted as unopposed.

## X.   Conclusion

Accordingly, the Court **ORDERS** the following:

1)   Plaintiffs Opposed Motion for Leave to Amend Complaint (Doc. 82) is **GRANTED in part** and **DENIED in part**. By **October 14, 2021**, Plaintiffs may file a Third Amended Complaint that clarifies the allegations to conform with its experts' opinions. Plaintiffs may not add any new defendants, but the name of the Defendant will be corrected to "Little Giant Ladder Systems, LLC f/k/a Wing Enterprises, Inc." The Clerk is **DIRECTED** to correct Defendant's name accordingly.

2)   Defendant's Motion to Strike Claim for Exemplary and Punitive Damages in Second Amended Complaint (Doc. 71) is **DENIED**.

3)   Plaintiffs' Opposed Motion for Leave to Supplement Rule 26 Expert Report due to Defendant's Withheld Discovery (Doc. 85) is **GRANTED**. Plaintiffs must make their expert, Peter Poczynok, available for a second deposition for questioning on his supplemental report **within 45 days** of this Order.

4)   Defendant's Motion for Protective Order Preventing Duplicative 30(b)(6) Deposition (Doc. 90) is **DENIED as moot and without**

**prejudice.**

5) Plaintiffs' (First) Motion to Compel (Doc. 93) is **GRANTED in part** and **DENIED in part**. Specifically, Requests 19, 21, 23, and 63 are granted; Request 22 is denied; and Requests 27 and 62 are granted in part and denied in part.

6) Defendant's Opposed Motion to Withdraw Stipulation (Doc. 94) is **GRANTED**.

7) Plaintiffs' (Second) Motion to Compel (Doc. 96) is **GRANTED in part** and **DENIED in part**. Specifically, Requests 68, 69, 70, and 71 are denied, and Requests 72 and 73 are granted.

8) Plaintiffs' Opposed Motion for Leave to Reply (Doc. 102) is **DENIED as moot** because Plaintiffs withdrew the motion (Doc. 103) and filed a corrected motion for leave (Doc. 104).

9) Plaintiffs' Opposed (Corrected) Motion for Leave to File Reply to Defendant's Response (Doc. 104) is **DENIED as moot**.

10) Defendant's Motion for Protective Order on April 6, 2021 30(b)(6) Deposition Duces Tecum (Doc. 105) is **GRANTED**.

11) Defendant's Unopposed Motion for Leave to File Under Seal (Doc. 106) is **DENIED as moot**.

12) Defendant's Motion to Quash and Motion for Protective Order on April 8, 2021 Notice of Videotaped Deposition and Subpoena Duces Tecum to Third-Party, Paul Junius, Esq. (Doc. 107) is **GRANTED in part and DENIED in part**. Specifically, the motion to quash is granted, but the motion for protective order is denied.

13) Plaintiffs' Motion for Appointment of a Master to Aid the Court with the Outstanding Discovery and to Re-depose Defendant's Witnesses due to Newly Produced "Smoking Gun" Evidence Disclosed One Month After the Discovery Cutoff (Doc. 126) is **DENIED in part** and **GRANTED in part**. Specifically, the motion for appointment of a master is denied, but the motion to re-depose Defendant's witnesses is granted as unopposed.

14) Plaintiffs' Motion for Leave to File a Reply to Defendant's Response to Plaintiffs' Motion to Appoint a Master (Doc. 128) is **DENIED**.

**ORDERED** in Fort Myers, Florida on September 30, 2021.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

39