UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Case 2:19-cv-00780-SPC-NPM

CRAIG L. DAVIS and
YVONNE M. DAVIS, his wife,

       Plaintiff,

vs.

LITTLE GIANT LADDER SYSTEMS,
LLC f/k/a WING ENTERPRISES, INC.,

       Defendant.

                                    /

## DEFENDANT'S MOTION TO STRIKE PLAINTIFFS' UNTIMELY SUPPLEMENTAL REPORTS FROM THEIR DAMAGES EXPERTS, OR, IN THE ALTERNATIVE, MOTION TO RE-OPEN DAMAGES DISCOVERY AND CONTINUE THE TRIAL DATE AND INCORPORATED MEMORANDUM OF LAW

Defendant LITTLE GIANT LADDER SYSTEMS, LLC ("Wing"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 37(c)(1), hereby requests this honorable Court to enter an Order striking Plaintiffs' untimely supplemental reports from their damage experts, or, in the alternative, to re-open damages discovery and continue the trial date ("Motion").

This case is set for trial on the July 5, 2022 trial docket.[1] [Doc. 131.] Discovery concluded on November 30, 2021. [*Id.*] The dispositive and *Daubert* motions deadline passed on December 31, 2021, and the Court issued a ruling on

---

[1] Due to a myriad of factors, including Covid, this trial has been continued numerous times. It was originally set for July 6, 2021 [Doc. 30], then continued to September 2021 [Doc. 40], and continued again to the current trial date.

1

these motions on March 4, 2022. [*Id*.; Doc. 168.]  The final pretrial meeting is one month away, and this case—before Plaintiffs' untimely disclosure—is on course to be tried.

On April 4, 2022, Plaintiffs informed Wing that their retained damage experts have conducted additional work and would be supplementing their reports. Plaintiffs did not, however, bring this issue to the Court's or Wing's attention during the April 4, 2022 status conference, which was held earlier that day.  On April 6, 2022, Plaintiffs served their Second Supplemental Expert Witness disclosures. [Ex. "1", Plaintiffs' Second Supplemental Expert Disclosure.] These experts, who are not treating doctors, are: (1) Brenda Mulder (economist); (2) Nicholas Suite, M.D. (neurology); (3) Lawrence Salmansohn, M.D. (neuropsychology); (4) Michael Shahnasarian, Ph.D. (vocational rehabilitation), and (5) Santo Bifulco, M.D.  (life care planner).  In addition to the new opinions from their retained experts, Plaintiffs also disclosed numerous new treating doctors.

When Plaintiffs served the supplemental expert reports, some on April 6 and some on a later date, Wing discovered that Dr. Salmansohn, Dr. Shahnasarian, and Dr. Suite each performed an <u>additional evaluation</u> of Plaintiff Craig Davis ("Davis") in March 2022. Each of the doctors also relied upon "new" medical records they were provided; however, many of these medical records **pre-date** the

Plaintiffs' February 9, 2021 damage expert disclosure deadline.  Each of these doctors rendered new opinions, which caused their life care planner and their economist to update their own reports.

Federal Rule of Civil Procedure 26 (e) permits supplementation for "the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report." *All-Tag Corp. v. Checkpoint Sys., Inc.*, No. 9:17-CV-81261, 2019 WL 5073499, at *3 (S.D. Fla. Oct. 9, 2019).  Plaintiffs offer no reason why their experts could not have re-evaluated Davis (which they do purely for the purpose of this litigation) prior to their disclosure deadline. Plaintiffs likewise offer no reason why their experts could not have relied upon the medical records that pre-date their disclosure deadline in their initial reports.  Lack of diligence cannot substitute for Rule 26 (e)'s narrow purpose. Plaintiffs' experts, therefore, should not be permitted to engage in additional work over one year past the disclosure deadline to bolster their defective reports.

Alternatively, Wing moves this Court to continue the trial date and re-open discovery.  If the Court permits Plaintiffs to supplement their expert reports, Wing will necessarily have to re-depose these experts on their new opinions and evaluate whether its own damage experts will need to do additional examinations and supplement their reports and rebut the new opinions.

In an effort to resolve this Motion prior to filing same, counsel for Defendant and counsel for Plaintiffs discussed obtaining dates for the depositions of Plaintiffs' experts and dates for potential re-evaluation by Defendant's experts. However, given the time restraints, Defendant does not believe that there is enough time for this to reasonably occur prior to trial and pre-trial deadlines.[2]

## BACKGROUND FACTS

1.      This case involves an accident which occurred on December 11, 2018, when Plaintiff Craig Davis allegedly injured himself while using a Velocity ladder ("subject ladder") manufactured by Defendant Wing.

2.      This Court ordered that Plaintiffs' damage expert witness disclosures were due on or before February 9, 2021. [Doc. 78].  Plaintiffs made their damage expert witness disclosures on February 9.  Plaintiffs disclosed six retained damages experts:

    a.      Brenda Mulder (economist);

    b.      Dr. Lawrence Salmansohn (neuropsychologist);

    c.      Dr. Michael Shahnasarian (vocational rehabilitation counselor);

---

[2] Defendant does believe that Plaintiffs made reasonable efforts to secure deposition dates from their experts and were working on same.  On April 25, they did provide one date – June 16 – for the deposition of their expert Dr. BiFulco.  Defendant believes this is too late and advised Plaintiffs of same.  Further, given other conflicts, Defendant simply does not believe that, even if some earlier dates for other experts can be obtained, there is enough time for all of this to be accomplished in light of the current case schedule.

        d.        Dr. Nicholas Suite (neurologist);

        e.        Dr. Santo BiFulco (life care planner);

        f.        Dr. Travis Snyder (radiologist).

3.      In accordance with the Court's order, Wing made its damage expert witness disclosures on March 15, 2021.  Defendant disclosed five retained damage experts:

        a.        Dr. Jason Demery (neuropsychologist);

        b.        Steve Bast (vocational rehabilitation and life care planning expert);

        c.        Dr. Stephen Durham (economist);

        d.        Dr. Michael Foley (radiologist);

        e.        Dr. Lane Carlin (neurologist).

4.      Discovery closed on November 30, 2021. [Doc. 131.]  The dispositive and *Daubert* motions have been filed and ruled upon. [Doc. 168.] The final pre-trial meeting is on May 27, 2022, the motions in limine deadline is June 6, 2022, and trial is set for July 5, 2022. [Doc. 131.]

5.      On April 4, 2022, Plaintiffs served a "Notice of Supplemental Expert Witness Disclosures" to Defendant.  [Ex. "2", Notice of Supplemental Expert Witness Disclosures.] In that notice, Plaintiffs stated that they intended to provide supplemental expert witness disclosures from Brenda Mulder, Dr. Nicholas Suite,

Dr. Lawrence Salmansohn, Dr. Michael Shahnasarian and Dr. Santo BiFulco by April 6, 2022.

6.      On April 6, 2022, Plaintiffs served Plaintiff's Second Supplemental Expert Witness Disclosures.  (Ex. "1".)  These disclosures: (1) stated that Brenda Mulder (Economist) would provide a supplemental expert report by the end of the week; (2) attached a supplemental report from Dr. Salmansohn; (3) attached a supplemental report from Dr. Shahnasarian; (4) stated that a supplemental report from Dr. Suite would be provided by the end of the week; and (5) stated that an expert report from Dr. BiFulco would be provided by the end of the week.  The disclosure also listed numerous, non-retained treating physicians or healthcare providers who had not previously been disclosed.

7.      On April 8, 2022, Plaintiffs provided supplemental reports from economist Kristi Kirby and life care planner Steven BiFulco.  Although not previously disclosed, economist Kristi Kirby is apparently the partner of economist Brenda Mulder in a company called "Mulder and Kirby Economists, Inc."

8.      Dr. Salmansohn's supplemental report is 22 pages long.  It states that Dr. Salmansohn did a new Neuropsychological Evaluation/Examination of Craig Davis on March 28, 2022.[3] The report also states that Dr. Salmansohn performed another interview with Mr. Davis' wife, Plaintiff Yvonne Davis.  The report states

---

[3] Dr. Salmansohn had previously done a neuropsychological evaluation of Davis on November 25, 2020.

that Salmansohn has reviewed new medical records but does not provide detail with respect to same other than stating that he has now reviewed reports of Medical Imaging Examinations from Dr. Travis Snyder.[4]  In his new report, Dr. Salmansohn has changed some of his diagnostic impressions with respect to Davis' injuries and conditions and has added diagnoses of attention and concentration deficit; frontal lobe and executive function deficit; and mild cognitive impairment due to a traumatic brain injury.  Dr. Salmansohn has changed his recommendations with respect to future care and treatment.

9.      Dr. Shahnasarian's supplemental report is 36 pages long.  The report states that Dr. Shahnasarian performed an additional vocational rehabilitation evaluation on March 24, 2022, which included a new clinical examination/interview with Davis and Mrs. Davis and a new review of updated/additional records.[5]  With respect to the new additional records reviewed, Dr. Shahnasarian lists records from **56 different sources**.  Dr. Shahnasarian provided a summary of the new records received.  Many of these records were clearly in existence prior to Dr. Shahnasarian's initial report.  For example, diagnostic studies from 2018; 2019 records from Dr. Kopp, Dr. Olarte, Dr. LaGamma, Allan Dimaculangan, PT, Dr. Murphy, Dr. Guzman, Dr. Mathieson;

---

[4] Unless he is referring to new examinations of which Defendant is not aware, Dr. Snyder's examinations were done prior to February 9, 2021.

[5] Dr. Shahnasarian had previously done a vocational rehabilitation examination of Mr. Davis on January 12, 2021.

2020 records from Dr. Hutchins, Dr. Ruzek, Dr. Echevarria, Dr. Guzman, Dr. LaGamma, Dr. Portnof, Dr. Nemitz, Dr. Marmol, Dr. Hillstrom, Dr. Khan, Dr. Hansel, and Dr. Nazar.

10.    Dr. BiFulco's supplemental report is 50 pages long.  His report indicates that since his prior report he has reviewed an additional 1,713 pages of medical records.  Many of these records were created prior to the date that Dr. BiFulco did his initial report, including (as noted above) records from 2018, 2019 and 2020.  In the supplemental report, Dr. BiFulco **adds 17 post accident diagnoses** of medical conditions for Davis.  He has added published references and guidelines for cognitive deficits and bilateral ankle impingement, which existed prior to his previous report.  He has changed each of his life care costs projections related to each individual item of care.

11.    Dr. Suite performed another evaluation of Davis on March 8, 2022 and provided a two-page report, which includes an addendum on March 10, 2022. Plaintiffs provided this supplemental report on April 15, 2022.  Dr. Suite concurs with the prior assessments of Dr. Shahnasarian and the economist report.  He further states that Davis will have a normal life expectancy with proper medical care and management.  He relies on "extensive medical records provided," including records from the "post-accident period through surgery on July 27, 2021" from Hillstrom Wright Plastic surgery.

12.    Kristi Kirby's Analysis of Economic Damages is 11 pages long. Kirby has never been disclosed as an expert by Plaintiffs.[6]  Kirby's supplemental report with respect to the present value of future medical expenses is based upon the new supplemental life care plan provided by Dr. BiFulco.

## MEMORANDUM OF LAW

13.    Plaintiffs cannot rely on supplementation to remedy their experts' deficient reports because their experts did an inadequate preparation.  Federal Rule of Civil Procedure 26 is not a right to supplement at will, particularly when Plaintiffs' experts rely upon medical records that existed prior to the Plaintiffs' February 9, 2021 disclosure date and when they could have performed updated evaluations well before the close of discovery, if needed.   Plaintiffs are not substantially justified in their "supplemental" disclosures.  Additionally, forcing Wing at this late-stage to depose Plaintiffs' damage experts and rebut their new opinions would unfairly prejudice Wing and its ability to prepare for trial.

### I.    Legal Standard

14.    Federal Rule of Civil Procedure 26 provides that expert disclosures must be accompanied by a written report that contains the opinions the witness will express and the basis and reasons for those opinions. Fed. R. Civ. P. 26(a)(2)(B).

---

[6] Defendant does note that Kirby is apparently a partner of Plaintiffs' disclosed economist Brenda Mulder and did co-sign the initial report with Brenda Mulder.  The supplemental report is signed only by Kirby.

The expert disclosure must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

15.     Rule 26(e) requires supplementation based on new information or to correct wrong information.  Fed. R. Civ. P. 26(e). Rule 26(e) "is not a device to allow a party's expert to engage in additional work, or to annul opinions or offer new ones to perfect a litigating strategy." *Cochran v. Brinkmann Corp.*, No. 1:08-cv-1790-WSD, 2009 U.S. Dist. LEXIS 114895, 2009 WL 4823858, at 5 (N.D. Ga. Dec. 9, 2009). "Rather, Rule 26 imposes a duty on parties to comply with the disclosure deadlines. It grants them no right to produce information in a belated fashion." *Mobile Shelter Sys. USA v. Grate Pallet Solutions, LLC, Shelter*, 845 F. Supp. 2d 1241, 1250 (M.D. Fla. 2012). "Courts have broad discretion to exclude untimely-disclosed expert witness testimony -- even when they are designated as 'supplemental' reports . . . [c]onsequently, **a party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert witness report**." *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277, 2016 WL 3102225, at *6 (S.D. Fla. June 2, 2016) (striking a supplemental report because its disclosure was untimely and it was not in fact supplemental) (emphasis added).

16.     If a party fails to provide information or identify a witness under Rule 26(a) or to supplement under Rule 26(e), then the party is not allowed to use that information or witness to supply evidence at trial "unless the failure was

substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Substantial

justification exists if there is "justification to a degree that could satisfy a

reasonable person that parties differ as to whether the party was required to comply

with the disclosure request." *Hewitt v. Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 682

(M.D. Fla. 2010) (quotation and citation omitted). A harmless failure to disclose

exists "when there is no prejudice to the party entitled to receive the disclosure."

*Id*. at 683.  Plaintiffs have the burden of proving that its actions were substantially

justified or harmless.  *United States v. Batchelor-Robjohns*, No. 03-201640-CIV,

2015 WL 1761429, at *2 (S.D. Fla. June 3, 2005).

**II.     The Supplemental Disclosures are Untimely, are Not Substantially
Justified, and are Not Harmless.**

17.     In this case, the Court permitted counsel wide latitude to expand the

time allowed to disclose expert reports. The Court extended the discovery deadline

several times to accommodate the needs of the parties. However, Plaintiffs did not

comply with the Court-imposed deadlines.

18.     Wing anticipates Plaintiffs will argue that their supplementation is

timely.  In correspondence dated April 18, 2022, Plaintiffs' counsel stated that

Plaintiffs had 90 days before trial to serve any supplemental reports pursuant to

Federal Rule of Civil Procedure 26(a)(2)(D)(i).  This is incorrect. A close reading

of Rule 26 shows that a party only has 90 days **in the absence** of a stipulation or

court order providing a disclosure deadline.  It states:

> **(D)** *Time to Disclose Expert Testimony*. A party must make these disclosures at the times and in the sequence that the court orders. **Absent a stipulation or a court order**, the disclosures must be made:
>> **(i)** at least 90 days before the date set for trial or for the case to be ready for trial;

*Id*. (emphasis added).  Here, the Court provided a disclosure deadline for Plaintiffs of February 9, 2021. Thus, Plaintiffs cannot rely upon this provision to argue that their supplementation was timely.

19.    Plaintiffs also cannot reasonably argue that their supplementation is permissible under Rule 26(e)(1)(A).  First, as a threshold issue, Plaintiffs did not solely rely upon information not known to them during the discovery process.  In fact, their experts heavily relied upon medical documentation that pre-dated the February 9, 2021 disclosure.  For example, Dr. Shahnasarian relies upon 56 new sources in his supplemental report, many of them from 2018, 2019, and 2020 medical records.  These existed not only before Plaintiffs' disclosure deadline, but before his initial report was issued.  Dr. BiFulco likewise relied upon many records from 2018, 2019 and 2020.   Dr. Salmansohn and Dr. Suite state that they relied upon voluminous records, but do not specify which records other than Dr. Salmansohn relied upon Medical Imaging Examinations from Dr. Travis Snyder and Dr. Suite relied upon records from Hillstrom Wright Plastic Surgery. Plaintiffs' experts could have included all of these pre-disclosure records in their initial reports.

20.     Plaintiffs also cannot reasonably argue that their experts' updated evaluations in March 2022 provide sufficient basis for supplementation under Rule 26.  Their retained experts *created* this evidence by performing these evaluations for litigation so late in the case.  Even if the experts relied upon *some* medical records that post-dated their disclosure deadline, Plaintiffs provide no reason why the experts could not have performed updated evaluations prior to the close of discovery and issued their supplemental reports sooner.  For example, Dr. Suite relied upon medical records post-accident period through surgery on July 27, 2021" from Hillstrom Wright Plastic Surgery; however, he did not issue his supplemental report until March 2022.  This is not timely.

21.     Plaintiffs cannot reasonably argue that the delay is substantially justified or harmless.  It is neither.  *See Friebel v. Paradise Shores of Bay Cnty., LLC*, No. 5:10-cv-120, 2011 WL 2420230 (N.D. Fla., June 13, 2011), at *2 (supplemental disclosures prohibited "whenever a party wants to bolster or submit additional expert opinions [because it] would reek [sic] havoc in docket control and amount to unlimited expert opinion preparation"); *Jones Creek Investors, LLC v. Columbia Cnty.*, 98 F. Supp. 3d 1279, 1289 (S.D. Ga. 2015) ("[Rule] 26(e) does not permit supplementation to add points that could have been made in the original expert report or to otherwise shore up weaknesses or inadequacies, and there is no reason why the new assumptions and methodologies used in the second report

13

could not have been adopted and disclosed in the first during the discovery period.")

22.     Plaintiffs could have supplemented their expert reports if there was additional information that came to light.   They cannot show substantial justification when many of the documents relied upon pre-dated their expert disclosure deadline.  Moreover, to the extent there were additional medical records relied upon that post-dated their expert disclosure deadline (like the July 2021 Hillstrom records), Plaintiffs had the obligation to timely supplement after receipt of same.   Supplementing in April 2022 is not timely, nor is it substantially justified.

23.     Plaintiffs' supplementation is not harmless. Plaintiffs waited until after the summary judgment and *Daubert* motions had been filed and ruled upon. Discovery is closed and Wing does not have a reasonable opportunity to depose Plaintiffs' experts or obtain rebuttal evidence.

24.     Plaintiffs' experts also do not simply re-confirm their existing opinions. All of the experts have changed their reports and opinions to some degree. For example, Dr. Salmansohn has added diagnoses of attention and concentration deficit; frontal lobe and executive function deficit; and mild cognitive impairment due to a traumatic brain injury. Dr. Salmansohn has changed his recommendations with respect to future care and treatment. Dr. BiFulco **adds**

**17 post accident diagnoses** of medical conditions for Davis and has changed each of his life care costs projections related to each individual item of care.

25.     Re-opening discovery is not a step that Wing should bear the burden of undertaking when these opinions could have been timely made. Re-opening discovery is harmful and prejudicial because doing so at this stage of the case will necessarily increase litigations costs and will lead to a delay in trial because Wing may need rebuttal examinations and reports (which will spawn additional discovery).   Precluding Plaintiffs' experts from offering any of their opinions in their supplemental reports is the appropriate remedy.  *Arevalo v. Coloplast Corp.*, No. 3:19CV3577-TKW-MJF, 2021 WL 2148770, at *5 (N.D. Fla. Apr. 5, 2021) (precluding plaintiff from using expert testimony for unjustified failure to disclose his opinion sooner); *All-Tag Corp. v. Checkpoint Sys., Inc.*, No. 9:17-CV-81261, 2019 WL 5073499, at *4 (S.D. Fla. Oct. 9, 2019) ("This is the second time Plaintiff All-Tag has tried to sneak in Dr. Hunter's affirmative expert opinion by labeling it something it is not. The result is the same. Dr. Hunter's "supplemental" report served on September 18, 2019, is hereby stricken.")

26.     If the Court permits Plaintiffs to supplement their expert reports, Wing, in the alternative, requests the Court to continue the trial deadline and re-open discovery for the limited purpose of obtaining the necessary discovery with regard to these new opinions. Wing will need to re-depose Plaintiffs' damage

experts on their new opinions and likely will need to issue rebuttal reports from their own experts.

## CONCLUSION

27.    Plaintiffs' supplemental expert reports do more than simply repeat facts and opinions found in their initial reports. They materially change the number and nature of the opinions offered.  Plaintiffs can also provide no reason for the late-stage disclosure, which undeniably prejudices Wing.   Therefore, Wing requests the Court to strike these supplemental reports in their entirety and prevent Plaintiffs' experts from relying upon same at trial.  In the alternative, if the Court permits these supplemental expert reports, Wing asks the Court to re-open discovery as to these issues and re-set the trial and relevant pre-trial deadlines.

## LOCAL RULE 3.01(G) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Wing has conferred with Plaintiffs' counsel in a good faith effort to resolve the issues raised herein and Plaintiffs do not consent to Defendant Wing's requested relief.   The good faith conference occurred through an in face meeting, a telephone conference and multiple electronic correspondence between counsel for Plaintiffs and counsel for Wing.

_s/ L. Robert Bourgeois_
L. Robert Bourgeois, Esquire
Florida Bar No: 0781540
Petra L. Justice, Esquire
Florida Bar No: 0056109
BANKER LOPEZ GASSLER P.A.
501 East Kennedy Blvd., Suite 1700
Tampa, FL  33602
Tel No: (813) 221-1500
Fax No: (813) 222-3066
Email: service-bbourgeois@bankerlopez.com
 Service-pjustice@bankerlopez.com
Attorneys for Defendant Wing

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the above and foregoing was sent via electronic filing to the following Service List, on this 27th day of April, 2022:

## SERVICE LIST

| | |
|---|---|
| Adam Jameson Bair, Esquire<br>The Law Office of Adam J. Bair, P.A.<br>4300 Biscayne Boulevard, Suite 203<br>Miami, FL 33137<br>E-Service: adam@adambairlaw.com<br>*Counsel for Plaintiffs* | Thomas F. Friedberg, Esquire (pro hac vice)<br>The Law Offices of Friedberg & Bunge<br>755 West A Street, Suite 100<br>San Diego, CA 92166<br>E-Service:  tom@lawofficefb.com<br>eva@lawofficefb.com<br>*Co-Counsel for Plaintiffs* |
| D. Brett Turnbull, Esquire (pro hac vice)<br>Turnbull Law Firm, P.C.<br>2 20th Street North, Suite 1600<br>Birmingham, AL 35203<br>E-Service: bturnbull@turnbullfirm.com<br>ashapielak@turnbullfirm.com<br>*Co-Counsel for Plaintiffs* | Drew E. Haskins, IV, Esquire (pro hac vice)<br>Turnbull Law Firm, P.C.<br>2 20th Street North, Suite 1600<br>Birmingham, AL 35203<br>E-Service: dhaskins@turnbullfirm.com<br>*Co-Counsel for Plaintiffs* |

  *s/ L. Robert Bourgeois*
L. Robert Bourgeois, Esquire
Florida Bar No: 0781540
Petra L. Justice, Esquire
Florida Bar No: 0056109
BANKER LOPEZ GASSLER P.A.
501 East Kennedy Blvd., Suite 1700
Tampa, FL  33602
Tel No: (813) 221-1500
Fax No: (813) 222-3066
Email: service-bbourgeois@bankerlopez.com
  Service-pjustice@bankerlopez.com
Attorneys for Defendant Wing

18