UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CRAIG L. DAVIS and YVONNE M. DAVIS,

    Plaintiffs,

v.                                    Case No.:   2:19-cv-780-SPC-NPM

LITTLE GIANT LADDER SYSTEMS, LLC,

    Defendant.
_____/

# **ORDER**[1]

Before the Court are Motions in Limine (Docs. 212; 213; 214; 215; 216; 217; 218; 219).  Where relevant, the parties responded in opposition (Docs. 223; 224; 225; 227; 228; 229; 230; 231; 232).  Because the Court writes only for the parties (who are familiar with the facts), it only includes what it necessary to explain the rulings below.

Before addressing the Motions, the Court notes there is reason to deny all Defendant's Motions.  Defendant filed seven separate Motions totaling eighty pages.  This was seemingly an effort to circumvent the District's twenty-five-page limit on motions.  M.D. Fla. R. 3.01(a) ("A motion must [be] in a single

---

[1] Disclaimer: Papers hyperlinked to CM/ECF may be subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them.  The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.

document no longer than twenty-five pages."). And it spawned ninety-one pages of response by Plaintiffs.

Many Middle District judges chastise lawyers for the practice of filing separate motions on individual issues to get extra pages without permission. *E.g.*, *S.E. Metals Mfg. Co. v. Fla. Metal Prods., Inc.*, No. 3:09-cv-1250-J-25TEM, 2011 WL 833260, at *1 (M.D. Fla. Mar. 7, 2011); *Morgan v. ACE Am. Ins.*, No. 3:16-cv-705-J-39MCR, 2016 WL 9211667, at *2 (M.D. Fla. Sept. 7, 2016); *Knights Armament Co. v. Optical Sys. Tech., Inc.*, No. 6:07-CV-1323-ORL, 2012 WL 3932863, at *1 n.2 (M.D. Fla. Aug. 20, 2012). Going forward, the parties should know the Court interprets Rule 3.01(a) to mean a party gets one motion in limine (or the rough equivalent of twenty-five pages) absent an order saying otherwise. Still, considering the limited schedule and ability to streamline proceedings, the Court grants the parties extra pages and considers the Motions.

Having addressed that, the Court tackles each Motion in turn.

A motion in limine is a "motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). These motions "are generally disfavored." *Acevedo v. NCL (Bah.) Ltd.*, 317 F. Supp. 3d 1188, 1192 (S.D. Fla. 2017). "Evidence is excluded upon a motion in limine only if the evidence is clearly inadmissible for any purpose." *Id.* (cleaned up).

2

### A. Doc. 212 (Rhead Incident and Warranty Claims)

Defendant seeks to exclude argument or evidence on two categories. The Court grants the Motion.

First, Defendant seeks to exclude argument or evidence of unrelated warranty claims. In this regard, the Court grants the Motion as unopposed.

Second, Defendant seeks to exclude argument or evidence of an unrelated incident when Claude Rhead fell on a similar ladder. In this regard, the Court grants the Motion.

Similar incidents could be relevant for many purposes. *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661 (11th Cir. 1988). A similar incident may be admissible to show a design defect "if (1) the proponent makes a showing that the prior accidents are substantially similar, (2) the prior accidents are not too remote in time, and (3) the probative value of the evidence outweighs any potential prejudice or confusion." *Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1350 (11th Cir. 2020).[2] Substantial similarity is at issue.

"The 'substantial similarity' doctrine does not require identical circumstances, and allows for some play in the joints depending on the scenario presented and the desired use of the evidence." *Sorrels v. NCL (Bah.) Ltd.*, 796

---

[2] The Court agrees with Plaintiffs' argument that federal procedural law governs the evidentiary admissibility questions in this case. *E.g.*, *Wright v. Farouk Sys., Inc.*, 701 F.3d 907, 910 n.6 (11th Cir. 2012).

F.3d 1275, 1287 (11th Cir. 2015). Instead, the central question is if "the two incidents were similar enough to allow the jury to draw a reasonable inference" defendant has the "ability to foresee this type of" incident. *Borden, Inc. v. Fla. E. Coast Ry.*, 772 F.2d 750, 755 (11th Cir. 1985).

One photo should make this open and shut in favor of exclusion:



(Doc. 212-3). The photo shows Rhead on a ladder with the upper left Rock Lock fully engaged. That makes Rhead's incident different because one fully engaged Rock Lock can support a person. In other words, Plaintiffs' theory requires both upper Rock Locks to be false locked. Plaintiffs dispute whether this picture establishes the Rock Lock was fully secure. There is not much the

4

Court can say as it believes the picture leaves no doubt Rhead's upper left Rock Lock was secure.

In short, the Court concludes the photo speaks for itself, and Rhead's incident was not substantially similar.

Even without this picture though, the Court reaches the same conclusion. Defendant's Motion outlines the differences; Plaintiffs' Response details some similarities. But the similarities Plaintiffs rely on do not overcome the significant differences.

Here's some differences between the incidents: (1) the type of ladder; (2) driveway slope; (3) driveway surface[3]; (4) roof type; (5) lack of scrape marks; and (6) manner of landing. True, as Plaintiffs contend, prior incidents need not be identical to establish substantial similarity. And there were some similarities between the incidents, most notably a 2.1 Rock Lock on both products. So perhaps the Court could overlook the differences above. But they are not alone. Taken with two other differences, it becomes clear these incidents were not similar enough for Rhead's fall to be admissible.

First, events preceding the ladder collapse were entirely different. For Plaintiff, he setup the Ladder, climbed to the upper fly section, then

---

[3] Plaintiffs imply the driveways are similar because both witnesses said the material was concrete. Even if both are concrete, the images show clear differences between the driveway surfaces.

5

immediately fell.  Rhead did not have this experience.  He setup his ladder, climbed, examined the roof, took pictures, recorded some thoughts on the roof condition, maybe moved up and down a rung or two, shifted his weight, heard the realtor tell him to be careful, thought about getting down, checked to see if the Rock Locks were engaged, then fell.  In all, Rhead was on his ladder for five to ten minutes before it collapsed.  And he was not sure whether he ever stepped onto the upper fly section.  At bottom, the way the telescoping occurred was too different to conclude these incidents were substantially similar.

Second, and more importantly, the upper left Rock Lock on Rhead's ladder was fully engaged.  Again, the picture above should make this undisputed.  But, there is also Rhead's testimony.  And he repeatedly testified that—at a minimum—his upper left Rock Lock was engaged.  To avoid any of the apparent confusion with this record, below are the relevant pieces of testimony:

> [Rhead]:  So I looked to my left and my Rock Locks were engaged.  I looked to my right, but I couldn't see because my shoulder was up like this and my other hand was way on the ladder.
>
> . . .
>
> [Counsel]:  Sure.  Do you believe you had the Rock Locks engaged prior to your incident?
>
> [Rhead]:  Yes, I believe I did have the Rock Locks engaged prior to the incident.

6

. . .

[Counsel]: And what was that based on?

. . .

[Rhead]: It was based on the sounds of the Rock Locks engaging when I put them up. I know I looked at the left side Rock Lock. I'm not absolutely sure I looked at the right side Rock Lock because it was on the other side of the ladder as I put it up.
So I was on this side, saw that one, but did not see the left side—the right side Rock Lock.

. . .

[Rhead]: I heard the agent say, "Be careful, Claude," and that's when I looked back down to make sure my Rock Lock was engaged. And I know it was on the right—I mean, on the left side because [inaudible] I could see it, but I didn't see it on the right side. . . .

. . .

[Counsel]: If I'm correct, sir, Mr. Rhead, do you recall that you—before you heard any noise, you looked to your left and saw that the Rock Lock was fully engaged and flush against the rail; is that right?

[Rhead]: I did that.

[Counsel]: And which Rock Lock would that have been, sir? Would that have been the highest Rock Lock on the left side or the lowest Rock Lock on the left side?

[Rhead]: It would have been the highest Rock Lock on the left side.

. . .

7

> [Rhead]: But I remember looking down to my left and seeing the Rock Lock. I remember trying to look down to the right and couldn't see that Rock Lock.
>
> . . .
>
> [Counsel]: But you're sure that that one Rock Lock was fully engaged because you could see it right there.
>
> [Rhead]: I could see it, yes.

(Doc. 229-1 at 7, 9, 19, 20).

From this, it is clear Rhead said the upper left Rock Lock was fully secure. Rhead didn't say he "tried" to look at the left Rock Lock or that he "thought" it was locked. According to him, the upper left Rock Lock *was* fully secure. That fact differentiates the incidents.

Poczynok's testimony does not change the outcome. His theory was Rhead could not see the Rock Lock based on his position. (Doc. 212-2 at 7). But nobody knows for sure where Rhead was standing. And the only evidence we have is Rhead's testimony. He repeatedly and clearly testified that he saw the upper left Rock Lock, which was fully engaged. At summary judgment, Plaintiff's testimony (while clear) left just enough room for Poczynok to make an assumption about false locking. (Doc. 168 at 9-10). But Rhead's testimony was far more definitive. In other words, as to Rhead's fall, Poczynok is not making assumptions based on the record. Rather, he's making up facts as he

goes along to fit the expert opinion he's getting paid to give. That's exactly the type evidence this Court must keep out.

Plaintiffs' lawyer was at Rhead's deposition. He was free to ask follow-up questions. A pretty obvious one comes to mind: "Mr. Rhead, is it possible you were mistaken, and the Rock Lock was not fully engaged?" But counsel never asked that or anything similar. So all that remains is Rhead's repeated testimony that he looked at the Rock Lock, which was fully secure.

Since Rhead's incident was not substantially similar, it is excluded.

**B. Doc. 213 (Unrelated Recall)**

Defendant seeks to exclude argument or evidence related to a prior voluntary recall. The Court grants and denies the Motion in part.

With this Motion, each party seeks too broad a ruling. Defendant wants exclusion of all evidence related to the voluntary recall, which would inevitably include information related to the defect at issue along with its design and manufacture. Plaintiffs offer not to use the word "recall" and concede to its redaction; but they contend a whole manner of evidence should be admissible that is solely related to the recall—a matter the Court already explained is different from the issues in dispute.

The Court cannot give a definite ruling on the vast evidence at issue in this Motion. So the parties will largely need to object when necessary at trial.

9

But the Court can rule in part and make known its general thoughts to guide the parties.

In part, Defendant seeks to exclude argument or evidence of the CPSC report (Doc. 200-3). In this regard, the Court grants the Motion.

This is the form Defendant submitted to CPSC explaining the voluntary recall. Once again, the recall related to unintentional disengagement—which is a separate defect from the false locking at issue. (Doc. 168 at 5-6). So the CPSC report is irrelevant to almost any conceivable issue at trial. Perhaps it could become relevant as rebuttal. But in Plaintiffs' case, the Court does not see how the CPSC report could be relevant. Nor do Plaintiffs make any convincing argument in that regard. And if the report was somehow relevant, the Court agrees with Defendant the evidence is unduly prejudicial and would confuse the issues, mislead the jury, and waste time.

Plaintiffs' brief clarifies why this document should not come in. Plaintiffs aim to make the recall a focus of the trial—by blurring the distinction between different defects and accusing Defendant of hiding evidence from the Government during that process. Specifically, Plaintiffs submit this evidence to support their theory Defendant knew about false locking and still sold the Ladder. This might have been relevant to Plaintiffs' punitive damages claim. But the Court already dismissed that theory. What remains is whether (1) the Rock Lock 2.1 contained a false lock design defect and (2) the Ladder had a

manufacturing defect related to a false lock. That is how the case will be tried. At this point, the Court will not open the gates for Plaintiffs to relitigate settled issues and present an unrelated defect to the jury to obfuscate the dispute.

For the same reasons, the Court grants the Motion to the extent that it seeks to exclude evidence about whether Defendant fixed or misrepresented the recall issue. This will not devolve into a trial on whether Defendant properly handled an unrelated recall. Even if Defendant never fixed the recall defect (i.e., unintentional disengagement), it did not cause the injury. Nor will Plaintiffs offer evidence or argument implying the false lock defect motivated the recall. The Court clarified it considers the issues separate. And nothing presented at any stage of this case would support Plaintiffs' guess the recall somehow had to do with false locking.

In short, the Court will exclude evidence related solely to the recall defect and any efforts to unnecessarily blur the line between unintentional disengagement and false locking. Such evidence would not be relevant. And if it were, the presentation would be unduly prejudicial while confusing the issues, misleading the jury, and wasting time.

That said, the Court cannot settle the bulk of the parties' disagreement on the Motion in the abstract. Plaintiffs agree to not use the word "recall." But in all other respects, the Court denies the Motion.

11

Again, Defendant is correct the recall is separate. It will not become the central focus of this trial. So we will not be wasting days of the jury's time talking about the recall for a separate defect.

But on the other hand, Plaintiffs are correct the recall is inextricably intertwined with their remaining claims. The 2.0 Rock Lock was redesigned in response to the recall—resulting in the 2.1. Plaintiffs claim that 2.1 lock was defectively designed and the Ladder defectively manufactured. It would be almost impossible for Plaintiffs to explain defects in design or manufacture without describing those processes, which would mention the recall.

For instance, Defendant asks to exclude "the changes made to the barrel pins to correct the recall problem." (Doc. 213 at 1). But the pin changes resulted in its design. That design, says Plaintiffs, caused the injuries. Likewise, evidence of the original and revised tolerances is relevant to Plaintiffs' theory the new tolerance should apply and, regardless, the Ladder violated each.[4] The Court will not tie Plaintiffs' hands behind their backs as they try to prove their case. So evidence touching on the recall cannot be categorically excluded as some of it is needed to explain Plaintiffs' theory.

With the clarification that the recall will not become the central issue at trial, the Court denies the Motion in part. It cannot grant a blanket exclusion

---

[4] Again, however, the Court will not permit tolerance evidence as it relates solely to the recall.

of all evidence touching on the recall because some of that evidence is inextricably intertwined with the remaining claims. If argument or evidence is improper, Defendant will need to object when necessary at trial.

### C. Doc. 214 (Rock Lock 3.0)

Defendant seeks to exclude argument or evidence related to the Rock Lock 3.0. The Court grants the Motion as unopposed. If Defendant opens the door to the possible issues identified by Plaintiffs, they may move for reconsideration outside the presence of the jury.

### D. Doc. 215 (Bent Pins)

Defendant seeks to exclude argument or evidence related to a bent barrel pin or any claims about bent pins. The Court grants the Motion as unopposed.

### E. Doc. 216 (Out-of-Tolerance Exemplar Ladders)

Defendant seeks to exclude argument or evidence of exemplar ladders Plaintiffs believe are out of tolerance. The Court denies the Motion.

As Plaintiffs explain, the exemplar ladders are the same model as the Ladder, and all underwent the same rework process. According to Plaintiffs, all these ladders are out of tolerance. If this were only a design defect case, the exemplars would be irrelevant. If this were only a strict liability manufacturing defect case, the exemplars would be a closer call. But this is a negligent manufacturing defect case too. At trial, the parties will need to sort out the tolerance dispute. If the ladders are all out of tolerance though, the

13

exemplars tend to show Defendant failed to use reasonable care in the manufacture of the Ladder through the rework process. For instance, it would call into doubt the go/no-go measuring process when swapping out 2.0 and 2.1 Rock Locks. In other words, the exemplars are relevant. While Defendant lists reasons to disregard this evidence, those are matters for cross-examination, not a motion in limine.

That said, the Court expects the exemplar evidence to be a small feature of trial. Both sides seem to understand the only defects which really matter at bottom are those that ended up in the Ladder. If argument or evidence is improper, Defendant will need to object when necessary at trial.

**F. Doc. 217 (Alta-One Ladder Testing)**

Defendant seeks to exclude argument or evidence on testing of an Alta-One ladder by Plaintiffs' liability expert. The Court denies the Motion.

While Defendant lofts reasons to doubt Plaintiffs' expert, those are matters for cross-examination, not a motion in limine. Defendant provides no convincing argument why exclusion of key expert testimony is necessary simply because his test was not an exact replica of the incident. In fact, the expert testified the same setup was not required because the test describes a general principle—it does not recreate the incident. *Muth v. Ford Motor Co.*, 461 F.3d 557, 566 (5th Cir. 2006). Again, Defendant may cross examine and raise questions before the jury. But Plaintiffs are right that there is no reason

14

to limine out the testimony. What's more, if Defendant seeks to challenge the scientific reliability for this part of the expert's opinion, such an attack should have come long ago in the form of a *Daubert* motion.

**G.   Doc. 218 (Omnibus—Cost Cutting and Comments About China, Third-World Countries, and Discovery Disputes)**

Defendant seeks to exclude argument or evidence on four categories. The Court grants and denies the Motion in part.

First, Defendant seeks to exclude argument or evidence of putting profits over people in manufacturing the 2.0 Rock Lock. In this regard, the Court grants the Motion in part.

The parties seem to talk past one another. Defendant mostly moves to exclude evidence of cost cutting as it relates to design and manufacture of the 2.0. Plaintiffs argue (in part) they should be able to make argument related to the hammer and chisel process for installing a 2.1 Rock Lock. Those are separate matters. Again, the 2.0 and 2.1 are different. The cost-cutting evidence Plaintiffs provided so far relates to the motivation for designing the 2.0—which is largely irrelevant to the remaining issues. So the Motion is granted to the extent that Plaintiffs will not introduce argument or evidence of cost cutting over the 2.0 Rock Lock (at least in their case-in-chief). As they contend, some evidence about motivations for the 2.0 design might become relevant on rebuttal. If so, Plaintiffs may move for reconsideration outside the

15

presence of the jury. But at this point, stray emails with no clear relation to the defect at issue (from years before the 2.1 was even conceived) are irrelevant.

For clarity, however, this ruling does not apply in a blanket fashion to argument or evidence on cost cutting for the 2.1 Rock Lock. For instance, it would be fair for Plaintiffs to probe whether the hammer and chisel process was a cost cutting measure, which might allow the jury to infer about negligent manufacturing. Nor is mechanical or engineering evidence of the 2.0 design automatically excluded. Plaintiffs, however, should not take this as a blessing to use inflammatory or prejudicial language not supported by the evidence. If argument or evidence is improper, Defendant will need to object when necessary at trial.

Second, Defendant seeks to exclude argument or evidence regarding prejudicial references to its ladders being inferior quality because they are made in China. Defendant's ladders are made in China. Nothing about that is prejudicial. In this regard, the Court denies the Motion. However, implying they are of inferior quality because of where they were made is prejudicial and that statement is not allowed. And Plaintiffs agree they will not make statements implying the ladders should have been made somewhere else, like the United States. If evidence veers into improperly prejudicial statements, Defendant will need to object when necessary at trial.

16

Third, Defendant seeks to exclude argument or evidence about Defendant donating ladders to third-world countries that are less litigious. In this regard, the Court grants the Motion as unopposed.

And fourth, Defendant seeks to exclude argument or evidence on privilege claims, designation of confidential documents, and the parties' discovery disputes. In this regard, the Court grants the Motion as unopposed. Neither side will refer to these matters.

## H. Doc. 219 (ANSI Testing and Prior Theories)

Plaintiffs seek to exclude argument or evidence on two categories. The Court grants and denies the Motion in part.

First, Plaintiffs seek to exclude argument or evidence on their prior theories and claims, which have been dismissed. In this regard, the Court grants the Motion as unopposed.

Second, Plaintiffs seek to exclude argument or evidence on ANSI standards. In this regard, the Court denies the Motion. Generally, compliance with an industry standard is evidence relevant to negligence. *E.g.*, *Sorrels*, 796 F.3d at 1282. ANSI is one of those common industry standards. *E.g.*, *Fagundez v. Louisville Ladder, Inc.*, No. 10-23131-CIV, 2012 WL 253214, at *2 (S.D. Fla. Jan. 26, 2012). Of course, compliance with the ANSI standards is not dispositive here. And Plaintiffs may cross examine on their theory the

17

standards fall short. At bottom though, Defendant may introduce evidence of ANSI standards.

## I. Remote Testimony

Finally, the Court addresses a statement buried within the briefing. At one point, Plaintiffs say the realtor will testify remotely. The Rhead incident is excluded. So the realtor's testimony is irrelevant. But Plaintiffs' statement worries the Court.

Rule 43(a) governs remote testimony at trial. Generally, a party must move to seek remote testimony showing "good cause in compelling circumstances." Fed. R. Civ. P. 43(a); *In re: 3M Combat Arms Earplug Prods. Liability Litig.*, No. 7:20-cv-39, 2021 WL 2605957, at *2 (N.D. Fla. May 28, 2021) ("The rule vests discretion with the Court—not the parties—to" allow remote testimony.). Neither party filed such a motion. And the deadline to file any "trial-related motion," including a motion for remote testimony, already passed. (Doc. 196 at 2). True, courts sometimes allow parties to stipulate for remote testimony (even though there's no textual basis for that). Still, courts always retain discretion to disallow remote testimony. Fed. R. Civ. P. 43(a) advisory committee's notes to 1996 amend. ("The court is not bound by a stipulation, however, and can insist on live testimony."). Even if the parties stipulate, the Court need not permit remote testimony. And the Court is not inclined to permit any remote testimony.

18

With that said, if the parties presume they can decide whether witnesses will testify remotely, they are sorely mistaken. Federal courts place paramount emphasis on in-person testimony. If the parties have been discussing and stipulating to remote testimony—without informing the Court at all—they should rethink the decision. The Court is under the impression every witness will provide live testimony (except for any proper deposition testimony read into the record). Trial will proceed under that assumption.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion in Limine to Exclude Evidence of Unrelated Accidents, Incidents, Lawsuits, and Claims (Doc. 212) is **GRANTED**.

2. Defendant's Motion in Limine to Exclude Evidence of the Unrelated, Prior Voluntary Recall (Doc. 213) is **GRANTED and DENIED in part**.

3. Defendant's Motion in Limine to Exclude Evidence of Rock Lock 3.0 (Doc. 214) is **GRANTED as unopposed**.

4. Defendant's Motion in Limine to Exclude Evidence and Claims of "Bent Pins" (Doc. 215) is **GRANTED as unopposed**.

5. Defendant's Motion in Limine to Exclude Evidence of "Out of Tolerance" Exemplar Ladders (Doc. 216) is **DENIED**.

6. Defendant's Motion in Limine to Exclude Evidence of Alta-One Ladder Testing (Doc. 217) is **DENIED**.

7. Defendant's Omnibus Motion in Limine (Doc. 218) is **GRANTED and DENIED in part**.

8. Plaintiffs' Motion in Limine to Exclude Defendant's Evidence of the ANSI Standards and to Exclude Prior Liability Theories and Legal Claims that were Dismissed (Doc. 219) is **GRANTED and DENIED in part**.

**DONE** and **ORDERED** in Fort Myers, Florida on August 31, 2022.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record